# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 17-CV-00904-KLM

MICHAEL RYAN,
SHARON MOLINA,
EARBY MOXON, and
HEATHER MYERS, on behalf of themselves,
and all others similarly situated,

        Plaintiffs,

v.

KIM BIMESTEFER, in her official capacity only as
Executive Director of the COLORADO
STATE DEPARTMENT OF HEALTH
CARE POLICY& FINANCING,

        Defendant.

## JOINT MOTION FOR APPROVAL OF CLASS NOTICE AND PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

### I. INTRODUCTION

Plaintiffs Ryan, Molina, Moxon, and Myers, and the certified class of Colorado Medicaid enrollees ("Medicaid HCV Class"), have reached a settlement with Defendant, Kim Bimestefer[1] as the Executive Director of the Colorado Department of Health Care Policy and Financing ("HCPF") to resolve all of the claims raised in this matter. *See* Appendix A, attached ("Settlement Agreement").[2] The outcome reflected in the Settlement Agreement represents a

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the Department's Executive Director Kim Bimestefer is substituted for former Executive Director Sue Birch.

[2] The Parties have agreed to all substantive terms including the amount of attorney's fees and incentive awards to be paid by HCPF. The payment provision (Appendix A at § 4) is currently pending review and approval by the State Controller's Office to ensure logistical compliance with applicable state regulations and certain tax reporting requirements. To the extent any changes are required to the payment provision, the Parties will highlight those for the Court. In

complete satisfaction of the relief sought by Plaintiffs and the Medicaid HCV Class certified by this Court on September 21, 2017.

HCPF has agreed that, for a period of two years, beginning January 1, 2018, the coverage criteria for Direct Acting Antiviral ("DAA") drugs within Medicaid's preferred drug list shall not include any restrictions to coverage based on an individual's Metavir Fibrosis Score, which is a form of measuring the impacts of Hepatitis C ("HCV") on a person's liver.[3] *See* Appendix A at § 6. The terms of the Settlement Agreement are enforceable via a motion to reopen this matter for a breach of the contractual terms agreed upon by the Parties. *See* Appendix A at § 3. According to the terms of the Settlement Agreement, the Court shall retain jurisdiction only for the purpose of presiding over proceedings between the Parties commenced on or before January 1, 2020 to enforce the contractual terms of the Settlement Agreement. *See* Appendix A at §§ 1.7, 3.

Based on this resolution, the Parties make this joint motion for preliminary approval, pursuant to Fed. R. Civ. P. 23(e). The proposed Settlement Agreement maximizes the relief available to class members by providing broad prospective relief and preserving the Medicaid HCV Class members' state law claims for retroactive damages. As such, the Parties move for an Order approving the proposed Class Notice and preliminarily approving the Settlement Agreement. Specifically, the Parties hereby move the Court to:

---

the meantime, the Parties are providing the Court with the most current draft of the Settlement Agreement for the purpose of review and preliminary approval as requested herein and pursuant to this Court's order dated October 29, 2018.  *See* Dkt. No. 67. The Parties will file the fully executed Settlement Agreement, including any required changes from the Controller, with this Court as soon as possible.

[3] This provision is subject to an exception that allows for changes related to fibrosis score in the preferred drug list should the prevailing medical standards shift or should there be a change in the law.

(a) approve the content of the proposed Class Notice;

(b) deem the proposed manner in which Class Notice shall be provided to the Medicaid HCV Class to be reasonable;

(c) authorize the mailing of Class Notice to the Medicaid HCV Class;

(b) preliminarily approve the Settlement Agreement; and

(d) establish a final settlement approval hearing and process.

## II. FACTS

This case was filed on April 13, 2017, on behalf of Plaintiffs Michael Ryan, Sharon Molina, Heather Myers and Earby Moxon, who are Colorado Medicaid enrollees diagnosed with chronic HCV. Plaintiffs filed suit on behalf of themselves and on behalf of similarly situated individuals in Colorado. Plaintiffs' Complaint, which seeks prospective relief only, alleges that Colorado Medicaid illegally denied coverage of DAA treatment for individuals based on a fibrosis score restriction in the Colorado Medicaid preferred drug list that was inconsistent with medical necessity standards. Plaintiffs specifically alleged that Colorado Medicaid violated the Medicaid statute by failing to provide medically necessary DAAs to some Medicaid enrollees but not to others. The Court denied HCPF's motion to dismiss the Complaint on September 5, 2017. *See* Dkt. No. 55.

On September 21, 2017, the Court certified the Medicaid HCV Class pursuant to Rule 23(b)(2). *See* Dkt. No. 59. The Medicaid HCV Class was defined by the Court as "[a]ll individuals who are or will be enrolled in the Colorado Medicaid Program; who have been or will be diagnosed with HCV; who are prescribed DAA medication . . . ; and who would be eligible for coverage of DAA medication but for the fibrosis score threshold included in HCPF's policy." *See id*. at 12.

3

In late 2017, while this action was still pending, HCPF underwent its ordinary, yearly review of all preferred drug list criteria for certain classes of medications, including DAAs. Through the course of the Drug Utilization Review committee's evaluation and recommendation process, the fibrosis score criterion for DAAs was eliminated. As of January 1, 2018, HCPF's preferred drug list criteria for approving coverage for DAAs no longer considers an individual's fibrosis score as a basis for approval or denial.

As a result, Plaintiffs are happy to report that Michael Ryan, Heather Myers and Earby Moxon have all been approved for coverage of DAA treatment under the revised criteria, have received treatment with DAAs, and have been cleared of the virus. In the meantime, the Parties have engaged in arms-length negotiations to resolve this matter through their proposed Settlement Agreement.

### III. OVERVIEW OF THE SETTLEMENT AGREEMENT

**A.  HCPF Will Not Deny Requests for Coverage Based on Fibrosis Score.**

As described above, HCPF has agreed not to implement any restrictions to coverage for DAAs based on an individual's fibrosis score for two years commencing on January 1, 2018. *See* Appendix A at § 6. This change has already been implemented into HCPF's preferred drug list criteria, as adopted on January 1, 2018.[4] However, due to the rapidly changing landscape in Hepatitis C treatment, the Settlement Agreement also contains some important limitations. HCPF may revise its preferred drug list criteria for DAA treatment to include fibrosis score prior to January 1, 2020 if medical standards and guidance for treatment of Hepatitis C viral infections change, or if relevant Medicaid law changes. *Id.* at § 6.1. If any changes of this nature are made

---

[4] *See* https://www.colorado.gov/pacific/hcpf/news/colorado-medicaid-announces-updated-hepatitis-c-treatment-criteria.

to the preferred drug list, HCPF is required to provide class counsel with notice 30 days prior to any such changes taking effect. *Id.*

### B.     Notice to the Medicaid HCV Class.

Although class notice is not always required for a class settlement certified under Fed. R. Civ. P. 23(b)(2), the Court has the authority to order class notice, and the Parties have agreed that notice is appropriate in this particular case. An important part of the relief for absent class members involves being notified of the changes to the preferred drug list. In the Settlement Agreement, HCPF agrees to distribute two types of notices. One notice is for current Medicaid HCV Class members who were previously denied DAA coverage and are currently enrolled in Medicaid ("Class Notice"). Appendix A at § 5. Class Notice is targeted at class members who would have qualified under the criteria set forth in the Settlement Agreement in the two years prior to January 1, 2018, but whose prior authorization requests were denied due to their fibrosis score. *Id.* The proposed Class Notice advises class members of the current coverage policy and, assuming the individual still qualifies for Medicaid and their physician prescribes treatment with DAAs, that they may be approved for treatment. *Id.* A proposed Class Notice for this group is attached as Appendix A, Exhibit A. *See* Appendix A, Exhibit A.

The second notice is intended for individuals who originally qualified within the Medicaid HCV Class definition, but who no longer qualify because they are no longer enrolled in Medicaid ("Special Notice"). *See* Appendix A at § 5.1. This Special Notice informs such individuals that if they, at some future date, qualify for and re-enroll in Medicaid, their fibrosis score would no longer be considered in determining whether to approve them for DAA coverage, and any state-law claims related to fibrosis score they may have are not waived by this

5

Settlement Agreement. *Id.* A draft of this Special Notice is attached as Appendix A, Exhibit B. *See* Appendix A, Exhibit B.

Class counsel will also create a webpage at the address www.cohepcsettlement.com, that includes information about this action, the Medicaid HCV Class, and the proposed settlement, including how to contact class counsel. Appendix A § 11.7.

### C.     Public Documentation and Provider Education.

HCPF has further agreed to provide class counsel with certain public documents related to the treatment of HCV with DAAs. Appendix A § 7. Additionally, HCPF will publish information for providers about the updated DAA criteria in the Provider Bulletin and produce a webinar to educate providers about the pharmacy prior authorization process. *Id* at § 8.

### D.     Release of Claims.

In return for the benefits under the Settlement Agreement, the named Plaintiffs and the Medicaid HCV Class will release all claims for injunctive and declaratory relief relating to HCPF's previous denial of coverage for DAAs based on fibrosis score. Appendix A § 12. Plaintiffs' release includes a release of individual claims for money damages only as to the four named Plaintiffs, but does not include a release of individual claims for money damages as to all other class members. *Id.* §§ 12, 14.

### E.     Attorney Fees, Costs, and Incentive Awards.

HCPF will pay class counsel's reasonable attorneys' fees and costs, as approved by the Court after a fairness hearing. Appendix A at § 4. The Parties have agreed that Plaintiffs will seek, and HCPF will not oppose, attorneys' fees and costs in the amount of $62,500. Plaintiffs will make a separate motion for approval of attorneys' fees in connection with final approval of the Settlement Agreement.

The Settlement Agreement also contemplates that Plaintiffs will request, and HCPF will not oppose, modest case contribution awards to the named Plaintiffs. Appendix A at § 4. Plaintiffs will seek, and HCPF will not oppose, a total award of $2,000, to be divided equally among the four named Plaintiffs. *Id.*

## IV. LAW AND ARGUMENT

**A.    Legal Standards for the Approval of a Class Action Settlement Agreement.**

Policy reasons generally encourage voluntary settlements of disputes. *Big O Tires, Inc. v. Bigfoot 4X4, Inc.,* 167 F. Supp. 2d 1216, 1229 (D. Colo. 2001); *Gates Corp. v. Bando Chem. Indus., Ltd.*, 4 F. App'x 676, 682 (10th Cir. 2001); *TGB, Inc. v. Bendis*, 36 F.3d 916, 923-924 (10th Cir. 1994). Pursuant to Fed. R. Civ. P. 23(e), the Court must approve settlement of the claims of a certified class. In approving a settlement agreement, the Court considers the "complete package taken as a whole, rather than the individual components." *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 290 (D. Colo. 1997) (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982)). Because the Medicaid HCV Class was certified under Rule 23(b)(2), the settlement approval criteria set forth in Fed. R. Civ. P. 23(e) is different from a typical damages class action process. For example, Fed. R. Civ. P. 23(e)(4), requiring the court to provide an opportunity to opt-out, does not apply. *See In re Motor Fuel Temperature Sales Practices Litig.*, 271 F.R.D. 221, 238 (D. Kan. 2010) ("Rule 23 does not impose mandatory notice and opt-out requirements for class certification under subsection (b)(2)"). The remaining elements of Fed. R. Civ. P. 23(e) guide the Court's approval of the proposed settlement.

There are two steps for judicial review of a proposed class settlement: a preliminary approval review and final fairness hearing. The purpose of preliminary approval is "to determine

7

whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing," not for the district court to make a final judgment on the settlement's fairness. *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006); *Rhodes v. Olson Assocs.*, P.C., 308 F.R.D. 664, 666 (D. Colo. 2015). As such, the proposed settlement should "be preliminarily approved where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives." *In re Crocs, Inc. Securities Litig.*, Civil Action Nos. 07-cv-02351-PAB-KLM, *et seq.*, 2013 WL 4547404, *3 (D. Colo. Aug. 28, 2013). Moreover, the Court should assess the reasonableness of the agreement in light of the context in which the parties made the agreement. *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012).

If the Court approves the preliminary Settlement Agreement, notice of the preliminary settlement and the fairness hearing are sent to the class members. During the fairness hearing, the Court determines if the Settlement Agreement should be approved. The Court must approve fair, reasonable, and adequate settlements. *Jones v. Nuclear Pharmacy, Inc*., 741 F.2d 322, 324 (10th Cir. 1984). The following factors are considered in determining whether a class action settlement is "fair, reasonable, and adequate."

(1) whether the proposed settlement was fairly and honestly negotiated;
(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
(4) the judgment of the parties that the settlement is fair and reasonable.

*Id.; see also Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir.2002); *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006); *Rhodes v. Olson Assocs.*, P.C., 308 F.R.D. 664, 666 (D. Colo. 2015).

**B.     The Court Should Preliminarily Approve the Parties' Settlement Agreement.**

**1.     The Settlement was Fairly and Honestly Negotiated.**

A settlement is fairly and honestly negotiated when negotiations occur between experienced counsel, negotiations are made at arm's length, and significant discovery occurred. *Lucas*, 234 F.R.D. at 693. All of these criteria are satisfied here.

Over a number of months, the Parties exchanged multiple Settlement Agreement drafts. The Parties "vigorously advocated their respective positions" throughout the case and in settlement negotiations. *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997). Each side dedicated substantial resources to this case. The Parties filed several motions, and engaged in significant negotiations around discovery issues. As such, each side contributed considerable resources to advancing their clients' positions. The outcome of the Settlement Agreement achieves the Plaintiffs' goal in initiating this litigation. It was in no way the result of collusion between the Parties.

**2.     The Ultimate Outcome of the Litigation Was In Doubt**.

The outcome of this litigation is not guaranteed to be in Plaintiffs' favor if the case were to proceed in litigation. The Parties disagree on the facts presented and legal conclusions alleged throughout the litigation process. For example, the Parties disagree as to whether HCPF's prior coverage criteria for DAAs violated the Medicaid Act, as well as to whether the January 1, 2018 policy change renders this action moot. Ultimately, the Parties agree that the Settlement Agreement represents an appropriate resolution of the case.

9

### 3. The Value of an Immediate Recovery Outweighs the Possibility of Future Relief.

While this factor is most easily applied in the context of claims for money damages, there can be little doubt that immediate resolution of this matter now is in the Parties' mutual interest. This lawsuit has been pending for nearly two years. This Settlement Agreement provides for Class Notice to the Medicaid HCV Class, informing individuals that their fibrosis score is no longer a factor to receiving approval to treat their HCV infection with DAAs—exactly the outcome sought in this case. Based on this alone, the value of this immediate relief far outweighs the value of future relief. Additionally, by resolving this case now, the Parties are also receiving the added benefit of foregoing the need to unnecessarily increase the resources allocated to this litigation.

### 4. The Parties and Their Respective Counsel Believe That the Settlement Is Fair, Reasonable and Adequate.

*i.     The Settlement Agreement Provides for Broad Prospective Relief*

The Settlement Agreement ensures that an individual's fibrosis score will not be considered as a factor when seeking coverage for DAAs. Plaintiffs, Michael Ryan, Heather Myers and Earby Moxon have already been approved for Medicaid coverage and received DAA treatment. And, should enforcement of this provision become necessary, the Settlement Agreement contemplates this Court retaining jurisdiction only for the purpose of enforcing the terms of the Settlement Agreement. Appendix A at § 3. Either Party may contest the other Party's compliance with the Settlement Agreement by filing a motion to reopen the action to seek enforcement of the Settlement Agreement terms, as long as the action is commenced on or before January 1, 2020. *Id.* at § 1.7.

The Settlement Agreement also provides payment of the Medicaid HCV Class attorneys' fees, costs, and an incentive award for the named Plaintiffs. These outcomes were reached after honest negotiations, and they achieve the goal of this litigation.

Additionally, the terms of the Settlement Agreement include broad Class Notice to the Medicaid HCV Class members of the change in the fibrosis score criterion for DAAs, which encourages members to consult with their doctors about the appropriateness of DAA treatment. All individuals within the Medicaid HCV Class who submitted prior authorization requests within two years prior to January 1, 2018, and whose prior authorization request was denied based on their fibrosis score, will receive the Class Notice. The Class Notice will also state that DAA coverage is only available to current Medicaid enrollees. Any previously denied Medicaid enrollee who remains interested in DAA treatment should consult with their provider about whether DAA treatment is still right for them. The normal prior authorization process will apply to any prior authorization requests seeking DAA treatment. Appendix A at § 5.

As an additional courtesy, HCPF will send separate Special Notice to former Medicaid HCV Class members who no longer qualify under the class definition because they are no longer Medicaid-eligible. The Special Notice will state that any state-law claims they may have based on fibrosis score requirements are not waived by the Settlement Agreement and that, if in the future these individuals were to again enroll in Medicaid, they may at that time be eligible to receive coverage for treatment with DAAs. Settlement Agreement § 5.1.

> ii. *Class Counsel Are Experienced in Similar Litigation and Recommend Settlement.*

Class counsel are very experienced in similar class action litigation and strongly recommend that the Court approve the Settlement Agreement.

> ### iii. There Was Sufficient Discovery.

By agreeing for the sake of economy and convenience to utilize the discovery record in *Cunningham v. Birch*, No. 16-cv-0253-NYW (D. Colo.), the Parties gained significant information about their respective litigation positions. For their part, class counsel reviewed the extensive discovery conducted in the related *Cunningham* matter, including the deposition of a key HCPF official. HCPF likewise had begun to gather significant information about Plaintiffs and their medical histories.

> ### iv. The Proposed Notice, Opportunity to Submit Objections and Fairness Hearing Are Sufficient to Safeguard the Interests of Class Members.

The Court should approve the proposed notices and direct that they be mailed to appropriate Medicaid HCV Class members and former Medicaid HCV Class members. *See* Appendix A, Exhibits A and B. The proposed notices summarize the Settlement Agreement, explain how class members can file objections, and inform class members where they can obtain more information. They also include the details for the date and time of the settlement approval hearing. The notices are targeted to current and former Medicaid HCV Class members, respectively, so that the information provided is relevant to their specific situation.

Class members may obtain more information about the Settlement Agreement from class counsel or HCPF. Class members will have an opportunity to consult with class counsel or their own attorneys.

## C.    A Final Approval Hearing Should Be Set.

Medicaid HCV Class members with comments, concerns, or objections to the Settlement Agreement should have an opportunity to submit written material for the Court's consideration. Class members wishing to appear in person to provide comments, concerns, or objections should

also have the opportunity to appear at a hearing before the Court decides if it fully approves the Settlement Agreement.

Class members wishing to appear in person should notify the Court and the Parties and provide a statement of the issue(s) they wish to discuss. The proposed Class Notice and proposed order submitted with this Motion require that such notice be given so that the Court and the Parties can consider and address the specific issues that the class members wish to discuss.

The Medicaid HCV Class requests that the Court set a hearing date to consider class members' comments, if any, and to decide if the Settlement Agreement should be finally approved and implemented.

### D.  Proposed Scheduling Order.

The Parties propose that the Court issue a scheduling order along with its Order Approving of Class Notice and Preliminarily Approving of the Settlement Agreement ("Preliminary Approval Order") that includes deadlines for the following:

(1)  Class Notice – within 30 days of this Court's Preliminary Approval Order, HCPF shall mail Class Notice to class members and Special Notice to those individuals that qualify, and class counsel shall set up the settlement website;

(2)  Any Comments or Objections to Settlement Agreement – within 90 days of this Court's Preliminary Approval Order, class members must submit to the Court any written comments or objections to the Settlement Agreement or indicate a desire to appear at the fairness hearing;

(3)  Motion for Attorneys' Fees, Costs and Incentive Awards – Class Counsel shall file its Motion for Attorneys' Fees, Costs, and Incentive Awards within 14 days from the Class Member Comments/Objections deadline;

(4)  Motion for Final Approval of the Settlement Agreement – the Parties shall file a Motion for Final Approval of the Settlement Agreement within 14 days from the Class Member Comments/Objections deadline; and

13

(5)     Fairness Hearing – the Parties request that the Court set a Fairness Hearing to consider the Parties' Motion within 45 days from the Class Member Comments/Objections deadline.

## V. CONCLUSION

The Parties respectfully request that the Court:

(a)     approve the content of the proposed Class Notice;

(b)     deem the proposed manner in which Class Notice shall be provided to the Medicaid HCV Class to be reasonable;

(c)     authorize the mailing of Class Notice to the Medicaid HCV Class;

(b)     preliminarily approve the Settlement Agreement; and

(d)     set a date for the final settlement approval hearing and establish a process for approval.

Respectfully submitted this 29th day of November, 2018.

*s/* Paul G. Karlsgodt
Paul G. Karlsgodt, #29004
BAKER & HOSTETLER LLP (CO)
1801 California Street, Suite 4400
Denver, CO 80202
Phone: 303.861.0600
Email: pkarlsgodt@bakerlaw.com

*s/* Mark Silverstein
Mark Silverstein #26979
Sara R. Neel #36904
ACLU FOUNDATION OF COLORADO
303 E. Seventeenth Ave., Suite 350
Denver, CO 80203
Phone: 720.402.3107
Fax: 303.777.1773
Email: msilverstein@aclu-co.org
          sneel@aclu-co.org

*s/* Kevin Costello
Kevin Costello (admitted in D. Colo;
Massachusetts Bar Number 669100)

HARVARD LAW SCHOOL CENTER FOR
HEALTH LAW & POLICY INNOVATION
122 Boylston Street
Jamaica Plain, MA 02130
Tel. (617) 390-2578

14

Email: kcostello@law.harvard.edu

*Attorneys for Plaintiffs*

CYNTHIA H. COFFMAN
Attorney General

s/ Corelle M. Spettigue
*Jennifer L. Weaver*\*
First Assistant Attorney General
*Corelle M. Spettigue*\*
*W. Eric Kuhn*\*
Senior Assistant Attorneys General
*Rachel O. Entrican*\*
*Michael D. McMaster*\*
Assistant Attorneys General
Colorado Department of Law
State Services Section
1300 Broadway, 6th Floor
Denver, CO 80203
Telephone: (720) 508-6140
Email: corelle.spettigue@coag.gov
\*Counsel of Record

*Attorneys for Defendant*