IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

MICHAEL RYAN,
SHARON MOLINA,
EARBY MOXON, and
HEATHER MYERS, on behalf of themselves,
and all others similarly situated,

        Plaintiffs,

v.

KIM BIMESTEFER, in her official capacity
only as Executive Director of the
COLORADO STATE DEPARTMENT OF
HEALTH CARE POLICY AND FINANCING,

        Defendant.

Civil Action 17-CV-00904-KLM

**JOINT MOTION FOR FINAL APPROVAL OF
CLASS SETTLEMENT AGREEMENT**

Michael Ryan, Sharon Molina, Earby Moxon, and Heather Myers ("Plaintiffs"), as certified class representatives [Docket 59], together with Defendant Kim Bimestefer, in her official capacity only as Executive Director of the Colorado State Department of Health Care Policy and Financing ("HCPF"), hereby jointly move this Court for final approval of the class Settlement Agreement, which is herein attached as **Exhibit 1**.

This motion follows the Court's December 4, 2018 Order, wherein it preliminarily approved of the Parties' proposed Settlement Agreement [Docket 69 at 3], approved of and ordered HCPF to provide Class Notice and Special Notice to identified individuals [*Id.* at 5], and provided opportunities for absent Class Members to be heard [*Id.* at 6]. To date, the Parties have

complied with the requirements of this Court's Preliminary Approval Order, including sending Class Notice to Class Members. [Docket 70 at 2; Declaration of Sara Neel ["Neel Decl."] at ¶ 5].

The response by Class Members has been positive. [Neel Decl. at ¶ 8]. In light of this and for the reasons set forth below, the Parties respectfully move for this Court to approve the Settlement Agreement and to find that it is fair, reasonable, and adequate, as set forth in Fed. R. Civ. P. 23(e).

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   History of the Litigation and Settlement Negotiations

This case was filed on April 13, 2017, on behalf of Plaintiffs Michael Ryan, Sharon Molina, Heather Myers and Earby Moxon, all of whom are Colorado Medicaid enrollees diagnosed with chronic Hepatitis C Virus ("HCV"). Plaintiffs filed suit on behalf of themselves and on behalf of similarly situated individuals in Colorado. Plaintiffs' Complaint alleged that HCPF illegally denied them coverage for treatment of their HCV with Direct Acting Antiviral drugs ("DAAs") based on a fibrosis score restriction in the Colorado Medicaid preferred drug list that they alleged was inconsistent with medical necessity standards. [Docket 14]. Plaintiffs specifically alleged that Colorado Medicaid violated the Medicaid statute by failing to provide medically necessary DAAs to some Medicaid enrollees, but not to others. *Id*.

This action followed a prior challenge to Colorado Medicaid's preferred drug list criteria for DAAs. *See Cunningham v. Birch*, 16-CV-02353-NYW, 2017 WL 1243020 (D. Colo. Feb. 17, 2017). However, the *Cunningham* litigation was dismissed without prejudice for lack of standing. Accordingly, shortly after the *Cunningham* dismissal, Plaintiffs initiated this action.

Since its inception, this litigation has required the Parties to dedicate a significant amount of time and resources. The Parties submitted substantial briefing on HCPF's Motion to Dismiss [Docket 22, 32, 35] and on Plaintiff's Motion for Class Certification [Docket 18, 29, 33], as well

2

as worked to navigate several outstanding discovery issues. Despite all Parties agreeing to the use of deposition testimony and other documents from the *Cunningham* litigation, additional issues related to discovery arose and required follow up. Ultimately, HCPF produced approximately 10,000 pages of documents in discovery, with the Plaintiffs producing approximately 1,000 pages of their own. [Neel Decl. at ¶ 4].

In the fall of 2017, during the course of the Drug Utilization Review Committee's evaluation and recommendation process, HCPF notified Plaintiff's Counsel that the criteria being challenged by Plaintiff in this lawsuit was to be eliminated, effective January 1, 2018. As of that date, HCPF's preferred drug list criteria for approving coverage for DAAs no longer considers an individual's fibrosis score as a basis for approval or denial.

Consequently, the Parties agreed to move for a stay of the case in order to allow the Parties time to reach a formal settlement agreement. [Docket 63]. Rather than ordering a stay, the Court found the matter more appropriate for administrative closure under D.C.Colo.LCivR 41.2, and instructed that the case could be reopened on a showing of good cause. [Docket 64].

The Parties then engaged in nearly a year of settlement negotiations. At the conclusion of these negotiations, the Parties jointly moved the Court to reopen the case and the Court granted the motion. [Docket 67]. On December 4, 2018, the Court granted the Parties' joint motion for preliminary approval of the draft Settlement Agreement, approved the proposed Class Notice and Special Notice, instructed on the time and manner of delivery for the Notices, and ordered the Parties to comply with several deliverables as outlined in the Settlement Agreement. [Docket 69]. Thus, this began the process of Court approval as mandated by Fed. R. Civ. P. 23(e).

### B.   The Settlement Agreement and Implementation of the Terms

#### 1.   *Two-Year Preferred Drug List Requirement*

Core to the Parties' Settlement Agreement is the mandate that HCPF refrain from introducing into the preferred drug list criteria for DAAs any restrictions related to fibrosis score, with certain allowances contemplating for future, potential changes in circumstances. [Docket 68-1 at § 6]. HCPF has agreed that it will not implement any such restrictions for at least two years, commencing on January 1, 2018.

#### 2.   *Class Notice and Special Notice*

The Settlement Agreement further provides Class Members, as well as certain individuals not currently eligible under the Class definition, with notice of the important changes made to the preferred drug list. Specifically, HCPF agreed to provide two separate types of notice, and Class Counsel also agreed to create a webpage to provide Class Members with information about this action and the proposed Settlement Agreement. [Docket 68 at 6].

The Court-approved Class Notice was sent on December 21, 2018, by direct first-class United States mail to 565 Class Members. [Docket 70 at 2]. The Class Notice advised the Class Members of the Settlement Agreement consistent with the Court's Order. [Docket 69]. Class Members were identified as individuals who sought prior authorization from HCPF for treatment with DAAs in the two years prior to January 1, 2018 and received a denial based on their fibrosis score. [Docket 69]. The Class Notice included a recommendation to Class Members to consult with their medical provider about whether treatment with DAAs was still right for them. [Docket 70-1]. The Class Notice also included information about the Fairness Hearing, and described how a Class Member may comment on, object to, or support the Settlement Agreement. *Id.*

The second type of Notice provided by HCPF—Special Notice—was also sent on December 21, 2018, by direct first-class United States mail to 56 individuals who may have

originally qualified under the Class definition, but who no longer qualify because they are no longer enrolled in Medicaid. [Docket 70 at 2]. The Special Notice informed such individuals that if they, at some future date, were to qualify for and re-enroll in Medicaid, their fibrosis score would no longer be considered in determining whether to approve them for DAA coverage. [Docket 69 at 5-6].

Lastly, Class Counsel created a website so Medicaid beneficiaries with HCV can easily access information about the new preferred drug list criteria, and about this lawsuit.[1] [Docket 68-1 at § 11; Neel Decl. at ¶ 5]. The website, like the direct mail notices, contains information about who is affected by the change to the preferred drug list and by this lawsuit, what are the terms of the Settlement Agreement, what are the deadlines for Class Members to object, providing instructions on how to be heard in the final hearing, as well as information on how to contact Class Counsel. [Docket 68-1 at Ex. A].

### 3. *Notice and Education to the Provider Community*

Additionally, in an effort to ensure that the provider community is aware of the updated preferred drug list criteria for DAAs, and to provide education as to the prior authorization process as a whole, HCPF agreed to issue a Provider Bulletin and to host an educational webinar. The Provider Bulletin—informing providers of the removal of the DAA criteria related to fibrosis score—was posted on the HCPF website on December 31, 2018, and was also sent via email to its provider network on January 2, 2019. [Docket 70].

As to the educational webinar, HCPF is currently in the process of finalizing the content and pursuing a production team within the Department. HCPF expects that the webinar will be

---

[1] The website can be found at: https://www.chlpi.org/co-hep-c-settlement/.

complete and posted to the HCPF website well in advance of the deadline set by the Settlement Agreement.

### 4. *Public Documents*

HCPF also agreed to provide Class Counsel with certain public documents related to the treatment of HCV with DAAs. HCPF is in the process of identifying and collecting any relevant documents relating to its policies, practices, and communications to share with Class Counsel. [Neel Decl. at ¶ 6].

### 5. *Settlement Award Payments*

The Settlement Agreement further requires HCPF, through the Colorado Office of Risk Management, to pay incentive awards to each Class Representative in the amount of five hundred dollars ($500.00). [Docket 68-1 at § 4]. The Settlement Agreement also requires that Class Counsel receive sixty two thousand five hundred dollars ($62,500.00) for attorneys' fees and costs incurred during litigation. *Id.* HCPF will not oppose the agreed-upon incentive award for each Class Representative, nor will it oppose the aforementioned award of attorneys' fees and costs. The Settlement Agreement states that the Class Representatives and Class Counsel will receive their respective payments within thirty (30) days of this Court's final approval of the Settlement Agreement. [Docket 68-1 at § 35]. HCPF does not anticipate any issue with the payments.

### 6. *Release of Claims and Covenant Not to Sue*

The Settlement Agreement contains a release of claims related to the lawsuit for the Plaintiffs and for all Class Members. [Docket 68-1 at § 12]. Indeed, this Settlement Agreement represents full and complete satisfaction of Plaintiffs' claims. The Settlement Agreement states that HCPF has not conceded liability or wrongdoing, and that neither Party is a prevailing party in this action for any purpose. [Docket 68-1 at § 20].

### C.   Class Member Response

To the best knowledge of the Parties, no objections have been lodged with the Court or with the Parties. Between December 26, 2018 and February 11, 2019, twenty individuals have contacted Class Counsel by phone, email, and letter in response to the Class Notice. [Neel Decl. at ¶ 8]. Class Counsel spoke with, advised, followed up and, when appropriate, referred each of these individuals to other resources. [Neel Decl., at ¶ 8]. All of the responses fall into one of the following four categories:

#### 1.   *Support for the Settlement Agreement and Confirmation of DAA Treatment*

Commenters explicitly voiced support for the Settlement Agreement. [Neel Decl. at ¶ 11 & Exhibit A]. At least one individual requested information about participating in the hearing to show their support. [Neel Decl. at ¶ 13 & Exhibit A]. Nearly half of the responses called to confirm that they did not need to take any further action after receiving treatment with DAAs under the new preferred drug list criteria. [Neel Decl. at ¶ 14].

#### 2.   *Requests for Clarification About the Settlement Agreement*

Class Counsel responded to a number of class member inquiries concerning the availability of individual damages and case contribution incentive awards. [Neel Decl. at ¶ 17 & Exhibit A]. One caller questioned how Class Counsel had received her information and whether Class Members were publicly listed. [Neel Decl. at ¶ 18 & Exhibit A]. Class Counsel allayed this concern by explaining the process by which the Class Notice was effected. *Id.*

#### 3.   *Requests for Assistance to Receive DAA Treatment*

At least four class members asked questions about their potential eligibility for DAA treatment after having a previous prior authorization request for DAA treatment denied. [Neel

Decl. at ¶ 15 & Exhibit A]. Class counsel advised those individuals to seek appointments with their medical provider to reassess and inquire about reapplying for treatment coverage. *Id.*

### 4.   *Inquiries Beyond the Scope of the Settlement Agreement*

Many people called for reasons unrelated to the Settlement Agreement. [Neel Decl. at ¶ 19 & Exhibit A]. Concerns were raised about specific doctors, the spread of HCV, and the need for other direct legal services. *Id.* In each of these instances, Class Counsel responded within the boundaries of the Settlement Agreement, offering referrals where appropriate. *Id.*

## II.   **FINAL APROVAL OF THE SETTLEMENT AGREEMENT SHOULD BE GRANTED**

### A.   **Legal Standard for Final Approval**

Under Fed. R. Civ. P. 23(e)(2), a class settlement must be "fair, reasonable and adequate." In the Tenth Circuit, courts examine four factors to determine whether a proposed class action settlement is fair, reasonable, and adequate, *Jones v. Nuclear Pharm., Inc.*, 741 F.2d 322 (10th Cir. 1984). The *Jones* factors are: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *Jones*, 741 F.2d at 324.

Approval of a class action settlement is within the discretion of the Court and is generally favored. *Fager v. CenturyLink Commc'ns., LLC*, 854 F.3d 1167, 1174-75 (10th Cir. 2016); *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997) ("settlements are generally favored"); *Diaz v. Romer*, 801 F. Supp. 405, 407 (D. Colo. 1992) ("A consensual resolution of a dispute is always preferred"). The "presumption in favor of voluntary settlement

agreements" is especially strong in class actions. *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014). "In addition to the conservation of judicial resources, the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010).

### B. The Settlement Agreement is Fair, Reasonable, and Adequate Under the Tenth Circuit's Standard

#### 1. The Settlement Agreement was Fairly and Honestly Negotiated.

First, where "the settlement resulted from arm's length negotiations between experienced counsel after significant discovery had occurred, the Court may presume the settlement to be fair, adequate and reasonable." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *Tuten*, 41 F. Supp. 3d at 1007 ("arms-length negotiations between experienced counsel" demonstrate "that the settlement was fairly and honestly negotiated"). The Court may conclude that fair and honest negotiations occurred where parties have "vigorously advocated their respective positions throughout the pendency of the case." *See Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997).

This Settlement Agreement is the result of protracted dialogue between experienced counsel engaged in arms-length negotiation. The Court saw fit to appoint Class Counsel in this action given their combined expertise in complex civil litigation, class actions, advocacy on behalf of vulnerable people, and specifically Medicaid litigation. [Docket 18 at 20; Docket 59 at 9-10]. This matter involved both a pleadings challenge by HCPF and a contested class certification process. [Docket 55, Docket 59]. Both Parties engaged in an adversarial discovery process that required intense negotiation and resulted in discovery production on both sides. [Neel Decl. at ¶ 4]. Discovery generated medical records, administrative documents,

9

communications related to HCV treatment criteria and DAA approvals, and more. *Id.* The history of the litigation conclusively establishes that the Parties "vigorously advocated their respective positions throughout the pendency of the case." *Wilkerson,* 171 F.R.D. at 284. The Court should thus find that the Settlement Agreement is fair, adequate, and reasonable.

### 2. *Serious Questions of Law and Fact Exist.*

Without specific analysis of the merits of the case here, the Court may conclude that serious questions of law and fact exist where disputes between the Parties are "such that they could significantly impact this case if it were litigated." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693–94 (D. Colo. 2006) (citing *Wilkerson,* 171 F.R.D. at 284).

The outcome of this litigation was not guaranteed for either Party if the case were to proceed to trial. The Parties disagreed on virtually all aspects, including the facts presented and the legal conclusions alleged throughout the litigation process. For example, the Parties disagree as to whether HCPF's prior coverage criteria for DAAs violated the Medicaid Act, as well as to whether the January 1, 2018 policy change renders this action moot, thereby depriving this Court of jurisdiction. Ultimately, the Parties agree that the Settlement Agreement represents an appropriate resolution of the case and urges this Court to find the Settlement Agreement to be fair, reasonable and adequate.

### 3. *The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief after Protracted and Expensive Litigation.*

In evaluating this factor, the recovery is to be weighed "against the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993), *overruled in part on other grounds*, *Devlin v. Scardelletti*, 536 U.S. 1 (2002).

In this case, the relief being offered to Plaintiffs now is significant, without their having to take the additional risks associated with litigation. This case has already been pending for nearly two years and, given the complicated nature of the legal questions and issues presented, it could very well carry on for much longer. Instead, this Settlement Agreement offers the Plaintiffs and the Class Members the security of knowing that HCPF has removed the fibrosis score criteria from its preferred drug list for DAA approval, and will continue to do so for the time being. Eligible individuals are receiving notice of the criteria change and being encouraged to seek out their medical providers about DAA treatment. This Settlement Agreement also helps to inform and educate providers about the updated criteria and how the prior authorization process works.

Consequently, both HCPF and all of Colorado's Medicaid beneficiaries infected with HCV will benefit from the predictability and security that this Settlement Agreement offers. As such, the Parties respectfully move for this Court to approve the Settlement Agreement and find that it is fair, reasonable, and adequate.

### 4.     *The Judgment of the Parties.*

"[T]he recommendation of a settlement by experienced plaintiff's counsel is entitled to great weight." *Wilkerson*, 171 F.R.D. at 288-89 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). The vast majority of Class Members who responded to the Notice supported the Settlement Agreement. [Neel Decl. at ¶ 11 & Exhibit A]. *See In re Crocs*, 306 F.R.D. at 691 (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)) ("The reaction of the class members further supports the conclusion that the Settlement Agreement is fair"). Class Counsel strongly believe the settlement to be fair and reasonable, an assertion further bolstered by the absence of Class Member objections. [Neel Decl. at ¶ 20].

### III. <u>FAIRNESS HEARING</u>

A Final Fairness Hearing to consider whether the proposed Settlement Agreement is fair, reasonable, and adequate and should be finally approved is scheduled for April 25, 2019 at 09:30 A.M. in Courtroom A 401 before Magistrate Judge Kristen L. Mix. [Docket 69].

### CONCLUSION

For the reasons stated herein, the Parties respectfully submit that the proposed Settlement Agreement merits final approval by this Court, and the proposed Order should be approved.

Dated: February 19, 2019

*s/ Paul Karlsgodt*
Paul G. Karlsgodt, #29004
BAKER & HOSTETLER LLP [CO]
1801 California Street, Suite 4400
Denver, CO 80202
Phone: 303.861.0600
Email: pkarlsgodt@bakerlaw.com

*s/ Mark Silverstein*
Mark Silverstein #26979
Sara R. Neel #36904
ACLU FOUNDATION OF COLORADO
303 E. Seventeenth Ave., Suite 350
Denver, CO 80203
Phone: 720.402.3107
Fax: 303.777.1773
Email: msilverstein@aclu-co.org
          sneel@aclu-co.org

*s/Kevin Costello*
Kevin Costello [admitted in D. Colo; Massachusetts Bar Number 669100]

CENTER FOR HEALTH LAW & POLICY INNOVATION
HARVARD LAW SCHOOL
1585 Massachusetts Avenue
Cambridge, MA 02138
Tel. [617] 496-0901
Email: kcostello@law.harvard.edu

PHILIP J. WEISER
Attorney General

<u>Corelle Spettigue</u>
s/ Corelle M. Spettigue, #39208
***Jennifer L. Weaver*****
First Assistant Attorney General
***Corelle M. Spettigue*****
***W. Eric Kuhn*****
***Michael D. McMaster*****
Senior Assistant Attorneys General
***Rachel O. Entrican*****
Assistant Attorney General
Colorado Department of Law
State Services Section
1300 Broadway, 6th Floor
Denver, CO 80203
Telephone: [720] 508-6140
Email: corelle.spettigue@coag.gov
*Counsel of Record
*Attorneys for Defendant*

CERTIFICATE OF SERVICE

    I hereby certify that a copy of this **JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AGREEMENT** was served on February 19, 2019, via the Court's ECF system to all counsel of record.

                                            /s/*Carolyn Bahr*