# Joint Motion for Final Approval of
# Class Settlement Agreement
# EXHIBIT A

# SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS

*Michael Ryan, et al. v. Kim Bimestefer, in her official capacity only,*
*as Executive Director of the Colorado Department of Health Care Policy and Financing*
*United States District Court for the District of Colorado, Case No. 17-cv-00904-KLM*

This Settlement Agreement and Release of All Claims (the "Settlement Agreement") is made as of November 15, 2018 (notwithstanding the actual date of execution) by and between Plaintiffs, Michael Ryan, Sharon Molina, Earby Moxon, and Heather Myers, on their own behalf and on behalf of a class of similarly situated individuals, and the Defendant, Kim Bimestefer, in her official capacity as the Executive Director of the Colorado Department of Health Care Policy and Financing.[1] Collectively, Plaintiffs and Defendant shall be referred to herein as the "Parties." This Settlement Agreement is a full expression of the agreements between the Parties.

## RECITALS

WHEREAS, Plaintiffs filed a Complaint against Defendant on April 13, 2017. The action—*Ryan et al. v. Birch* (Civil Action No. 17-cv-00904-KLM) (the "Action")—was brought in the United States District Court for the District of Colorado (the "Court"), and sought relief both on Plaintiffs' own behalf and on behalf of a class of similarly situated individuals ("Medicaid HCV Class").[2]

WHEREAS, Plaintiffs asserted various claims within their Complaint arising out of Defendant's application of its preferred drug list criteria, specifically challenging the criteria pertaining to an individual's Metavir Fibrosis Score. Plaintiffs allege that the Metavir Fibrosis Score criteria resulted in the improper denial of prior authorization requests seeking Medicaid coverage for medically necessary treatment with direct acting anti-viral drugs ("DAAs") to treat individuals infected with chronic Hepatitis C Virus ("HCV"). Based on these allegations, Plaintiffs' Complaint raised the following three legal claims:

> (1) Defendant violated 42 U.S.C. § 1396a(a)(10)(A)—the Medicaid availability requirement;

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the Department's Executive Director Kim Bimestefer is substituted for former Executive Director Sue Birch.

[2] The term "Medicaid HCV Class" shall be defined to mean the class—as certified by the Court in Civil Action No. 17-cv-00904-KLM in its order dated September 21, 2017—defined as follows:

> All individuals who are or will be enrolled in the Colorado Medicaid Program; who have been or will be diagnosed with HCV; who are prescribed DAA medication by an infectious disease specialist, gastroenterologist, or hepatologist or by a primary care provider in consultation with one of these specialists; and who would be eligible for coverage of DAA medication but for the fibrosis score threshold included in HCPF's policy.

*Ryan, et al. v. Bimestefer*

    (2) Defendant violated 42 U.S.C. § 1396a(a)(10)(B)(i), (ii) and 42
        C.F.R. § 440.240—the Medicaid comparability requirement; and

    (3) Defendant violated 42 U.S.C. § 1396a(a)(8)—the Medicaid
        reasonable promptness requirement.

WHEREAS, on September 21, 2017, the Court granted Plaintiffs' Motion for Class Certification, and certified the Medicaid HCV Class under Federal Rule of Civil Procedure 23(a), (b)(2). The Court appointed Plaintiffs Michael Ryan, Sharon Molina, Earby Moxon, and Heather Myers as class representatives,[3] and appointed Paul G. Karlsgodt and Sammantha J. Tillotson of Baker & Hostetler LLP, Mark Silverstein and Sara Neel of ACLU Foundation of Colorado, and Kevin Costello of Harvard Law School Center for Health Law and Policy Innovation as class counsel ("Class Counsel").

WHEREAS, the Parties, in good faith, have agreed to avoid the expense and time of litigation, to resolve all of their differences by this Settlement Agreement, and that this Settlement Agreement fully resolves all of the claims and differences between the Parties.

WHEREAS, in light of the Parties' intent to resolve all of their differences by Settlement Agreement, the Court found the matter to be appropriate for administrative closure under D.C.Colo.LCivR 41.2. The Court administratively closed the Action on December 15, 2017.

THEREFORE, on condition of the promises and covenants contained in this Settlement Agreement, the adequacy and sufficiency of which are hereby acknowledged, the following is agreed:

## COURT APPROVAL AND JURISDICTION

1.    **COURT APPROVAL OF SETTLEMENT AGREEMENT REQUIRED:** The promises and covenants contemplated under this Settlement Agreement must be approved by the Court, as provided herein and pursuant to Fed. R. Civ. P. 23. Pursuant to Fed. R. Civ. P. 23, the Parties agree to jointly recommend the following procedure to the Court for approval of the terms of this Settlement Agreement:

    1.1    *Joint Motion for Approval of Notice.* Class Counsel and counsel for Defendant shall jointly move for an order from the Court that approves of the content of the proposed Notice and deems the proposed manner in which notice shall be provided to the Medicaid HCV Class to be reasonable ("Preliminary Approval Order").

    1.2    *Preliminary Approval Order.* The Court will enter a Preliminary Approval Order detailing its findings as to whether the content of the proposed Medicaid HCV Class Notice, appended to the Settlement Agreement as Exhibit A and detailed in Part 5, below ("Notice"), is appropriate for the Medicaid HCV Class, and whether the manner in which the Notice is to be sent to the identified members of the Medicaid HCV Class

---

[3] Unless otherwise specified, all references in this Settlement Agreement to "Plaintiffs" mean both: (1) Plaintiffs Michael Ryan, Sharon Molina, Earby Moxon, and Heather Myers, in their individual capacity; and (2) Plaintiffs as representatives of the Medicaid HCV Class.

*Ryan, et al. v. Bimestefer*

is reasonable. Assuming the Court approves of both the content of the Notice and the manner in which Notice is to be sent, then the Court shall set a date for the Fairness Hearing.

1.3    *Approved Notice Sent to Class Members.* Defendant, on or before the date set by the Court, will send the approved Notice described in Section 5 to the members of the Medicaid HCV Class identified in Section 5.

1.4    *Fairness Hearing.* On the date set in the Preliminary Approval Order, the Court will hold a Fairness Hearing to determine whether the Settlement Agreement proposed by the Parties is fair, reasonable, and adequate, and whether the Settlement Agreement is binding on all Medicaid HCV Class members.

1.5    *Final Approval Order.* The Court will enter a Final Approval Order detailing its findings as to whether the Settlement Agreement is fair, reasonable, and adequate, and whether the Settlement Agreement is binding on all Medicaid HCV Class members. Assuming the Court finds that the Settlement Agreement is fair, reasonable and adequate, and that it is binding on all Medicaid HCV Class members, then the Parties shall promptly execute the approved Settlement Agreement within seven [7] days of the Fairness Hearing.

1.6    *Joint Motion for Dismissal; Dismissal of the Action.* Within 14 days of the full execution of this Settlement Agreement, the Parties shall file a Joint Motion for Dismissal and [Proposed] Order of Dismissal. In filing the Joint Motion and [Proposed] Order, it is the intention of the Parties that the Court retain jurisdiction only for the purpose of enforcing the contractual terms of this Settlement Agreement for the entire duration of this Settlement Agreement.

1.7    *Order Dismissing Action.* The Court will enter an order dismissing or administratively closing the Action in *Ryan et al. v. Bimestefer* (Civil Action No. 17-cv-00904-KLM) in accordance with Federal Rule of Civil Procedure 41(a)(2) and 23(e) and expressly state therein that it retains jurisdiction over the Action only for the purpose of enforcing the terms of this Settlement Agreement. The Court shall retain jurisdiction only for proceedings to enforce the terms of this Settlement Agreement commenced on or before January 1, 2020. In the event proceedings to enforce the terms of this Settlement Agreement are initiated before January 1, 2020, the Court shall dismiss the Action with prejudice upon resolution of such proceedings or on January 1, 2020, whichever is later.

2.    **COURT REJECTION:** If the Court declines to enter either the Preliminary Approval Order, as described in Section 1.2, or a Final Approval Order, as described in Section 1.5, or an Order Dismissing Action, as described in Section 1.7, then this Settlement Agreement shall automatically terminate, and thereupon shall become null and void and the Action—*Ryan, et al v. Bimestefer* (Civil Action No. 17-cv-00904-KLM)—shall revert to its status as of December 12, 2017, as described in Section 2.4. The Court must finally approve the Settlement Agreement for it to be effective and binding upon the Parties. There shall be no modifications or amendments to the promises and

*Ryan, et al. v. Bimestefer*

covenants contemplated under this Settlement Agreement, unless such modifications or amendments are expressly agreed to, in writing, by the Parties.

2.1     *Court of Appeals Reversal.* If the Tenth Circuit Court of Appeals reverses the Court's Final Approval Order, as described in Section 1.5, then, provided that no appeal is then pending from such a ruling, this Settlement Agreement shall automatically terminate and thereupon become null and void, on the 31st day after issuance of the order referenced in this section.

2.2     *United States Supreme Court Reversal.* If the United States Supreme Court reverses the Court's Final Approval Order, as described in Section 1, then, provided that no appeal is then pending from such a ruling, this Settlement Agreement shall automatically terminate and thereupon become null and void, on the 31st day after issuance of the order referenced in this section.

2.3     *Pending Appeal.* If an appeal is pending of an order declining to approve the Settlement Agreement, this Settlement Agreement shall not be terminated until final resolution or dismissal of any such appeal, except by written agreement of the Parties.

2.4     *Reversion of Action.* If the Court declines to enter either the Preliminary Approval Order, as described in Section 1.2, or a Final Approval Order, as described in Section 1.5, or an Order Dismissing Action, as described in Section 1.7, the Action—*Ryan, et al v. Bimestefer* (Civil Action No. 17-cv-00904-KLM)—shall revert to its status as of December 12, 2017, and the Parties shall request a Scheduling Conference with the Court to resume proceedings.

3.     **DISPUTE RESOLUTION PROCEDURE; BREACH OF CONTRACT:** In the event that either Party perceives a deficiency in Plaintiffs' or Defendant's compliance with their respective Obligations under this Settlement Agreement[4], the Party that perceives a deficiency shall first notify the other Party of its alleged non-compliance. If the Party alleged to be non-compliant is unable to provide the necessary information to demonstrate compliance with its obligations under this Settlement Agreement, the Parties shall attempt to obtain agreement amongst themselves as to the steps necessary to satisfy the alleged deficiency. If the Parties are unable to obtain agreement amongst themselves as to how to satisfy the alleged deficiency, either Party may seek to challenge the other Party's compliance with this Settlement Agreement in Court by filing a motion to reopen the Action to seek enforcement of the contractual terms of this Settlement Agreement.

The Parties agree that the Court shall retain jurisdiction over the contractual enforcement of this Settlement Agreement. However, this Settlement Agreement is not, nor is it intended to be, a consent decree. The Parties agree to jointly recommend that the Court retain jurisdiction over the contractual enforcement of this Settlement Agreement as part of its Final Approval Order, as described in Section 1.5, and its Order Dismissing Action, as described in Section 1.7. The Court

---

[4] Obligations of Plaintiffs are described in Sections 11, 12, 13, 14, 15, 16, 17 of this Settlement Agreement. The Obligations of Defendant are described in Sections 4, 5, 6, 7, 8, and 9 of this Settlement Agreement.

*Ryan, et al. v. Bimestefer*

shall retain jurisdiction over the Action only for the purpose of enforcing the terms of this Settlement Agreement. The Court shall retain jurisdiction only for proceedings to enforce the terms of this Settlement Agreement commenced on or before January 1, 2020.

## OBLIGATIONS OF DEFENDANT

4.     **PAYMENTS:** Without admitting any liability to Plaintiffs, or admitting that the Defendant, the State of Colorado, or any of their employees or agents have committed any act or omission that gives rise to any liability, the Office of Risk Management for the State of Colorado, on behalf of Defendant, shall make the following Settlement Award Payments:

> The Office of Risk Management for the State shall pay a total sum of five hundred dollars ($500.00) to each of the Class Representative Plaintiffs—Michael Ryan, Sharon Molina, Earby Moxon, and Heather Myers (the "Incentive Awards").

> The Office of Risk Management for the State shall also pay a total sum of sixty two thousand five hundred dollars ($62,500.00) to BAKER & HOSTETLER, LLP, as Class Counsel, for attorney fees and costs incurred during the pendency of the litigation (the "Attorney Fee Award").

> The Settlement Award Payments constitute full and final settlement of any and all claims arising from or relating to the Litigation. Defendant will take no position with respect to the application for the Incentive Awards to each of the Class Representative Plaintiffs, provided that the Incentive Awards do not exceed the amount set forth herein. Likewise, Defendant will take no position with respect to the application for the Attorney Fee Award to Class Counsel, provided that the Attorney Fee Award does not exceed the amount set forth herein.

4.1     The Office of Risk Management for the State of Colorado, on behalf of Defendant, will not pay any other sums for any other purpose, including any other fees, costs, or expenses.

5.     **DEFENDANT'S CLASS NOTICE:** On or before the date set by the Court, Defendant, at its expense, shall cause the Class Notice to be delivered by direct first class United States mail, forwarding requested, to all individuals within the Medicaid HCV Class who have submitted—through a Medicaid provider on their behalf—a prior authorization request for treatment with DAAs in the two years prior to January 1, 2018, and whose prior authorization request was denied based on the preferred drug list criteria related to Metavir Fibrosis Score. Defendant may not provide Notice to individuals within the Medicaid HCV Class who have already been approved for treatment with DAAs. The Parties agree that the Notice will include: (A) a statement that DAA coverage under the Medicaid program is only available to current Colorado Medicaid recipients; (B) a statement that any previously denied Medicaid recipient who remains interested in DAA treatment should seek a consultation with their medical provider regarding whether DAA treatment is still

5

*Ryan, et al. v. Bimestefer*

appropriate for them; and (C) a statement informing Colorado Medicaid recipients that the normal prior authorization process will apply to any prior authorization requests submitted seeking DAA treatment.

    5.1    In addition, on or before the date set by the Court, Class Notice shall include a special, separate notice to individuals who once were within the Medicaid HCV Class, described in Section 5, above, but who are no longer Medicaid-eligible. Specifically, the special separate notice shall be delivered by direct first class United States mail to all individuals who originally qualified under the definition of the Medicaid HCV Class, but who lost their Medicaid eligibility at some point between September 21, 2017 (the date the Medicaid HCV Class was certified) and January 1, 2018 (the date the preferred drug list criteria related to Metavir Fibrosis Score was eliminated). Such special notice will inform those individuals that any state-law claims are not waived by this settlement agreement and that if they re-enroll in Medicaid, they will be able to request treatment with DAAs, despite the prior denial. Defendant shall send such special separate notice to the last known address of the individuals identified herein. It is explicitly understood and agreed that Defendant is not required to take any measures to find more current addresses for these individuals.

    5.2    Subject to the Preliminary Approval Order as described in Section 1.2, a draft of the Notice and the Special Notice is attached to this Settlement Agreement as Exhibits A and B.

    6.    **PREFERRED DRUG LIST CRITERIA:** Effective January 1, 2018, Defendant approved preferred drug list criteria for DAA treatment that removed a recipient's Metavir Fibrosis Score from consideration in the prior authorization request process. Defendant agrees that, for a period of two years, it will not reinstate the criteria related to Metavir Fibrosis Score into the preferred drug list. For the period from January 1, 2018 to January 1, 2020, no criteria within the preferred drug list for DAA treatment shall include restrictions to coverage based on Metavir Fibrosis Score. This provision shall be subject to the following exceptions:

    6.1    *Exceptions*: In the event medical standards and guidance regarding Metavir Fibrosis Score were to change, or in the event that federal or state Medicaid law relevant to the claims in this case were to change, the Defendant may revise its preferred drug list criteria for DAA treatment consistent with such changes. If such revisions are made within the two-year term described in this Section 6 above, then Defendant shall provide Class Counsel with advance written notice 30 days before the changes are to take effect. Furthermore, nothing in this Settlement Agreement prohibits Defendant from implementing immediate changes as necessary to conform to any and all safety guidance issued by the federal Food and Drug Administration. In the event that Colorado Medicaid optional pharmacy benefits[5] are eliminated, Defendant shall have no obligation to continue providing DAAs, or any other pharmacy benefit.

---

[5] As authorized pursuant to 42 U.S.C. § 1396a(a)(10)(A) and 42 U.S.C. § 1396d(a)(xvii)(12).

*Ryan, et al. v. Bimestefer*

6.2    *Disputes*: The Parties agree that any dispute about the applicability of this Section 6 and any exceptions detailed herein shall be resolved as set forth in Section 3, *supra*.

6.3    *Appeal Rights*: Nothing herein shall be construed to limit or affect a Medicaid HCV Class Member's right to appeal a claims determination under applicable law.

7.    **PUBLIC DOCUMENTS REGARDING DAA TREATMENT:** For a term of two years, to begin on January 1, 2018, and only for documents first published after this date, Defendant agrees to provide Sara Neel of the ACLU with the following public documents related to Colorado Medicaid, only where such documents address HCPF's policies and practices for the coverage of treatment of Hepatitis C Virus with DAAs: (1) HCPF Provider Bulletins; (2) written correspondence with the Joint Budget Committee or other entities or individuals within the Colorado General Assembly; (3) written testimony (or transcripts of oral testimony) before the Colorado General Assembly or any division thereof; (4) P&T Committee Agendas, Minutes and Preferred Drug List Drug Class Review Announcements; (5) Hepatitis C Prior Authorization Request Form revisions.

8.    **PROVIDER EDUCATION:** Defendant will publish information for providers in the Provider Bulletin about the updated HCV coverage criteria. Additionally, Defendant shall provide a webinar for the purpose of educating providers about the pharmacy prior authorization process. The webinar will be recorded and posted on Defendant's website. The educational webinar shall take place within three (3) months of the date on which this Agreement is fully executed by all parties, and shall be available to providers on Defendant's website for a period of one year.

9.    **RELEASE OF CLAIMS:** Upon the entry of the Final Approval Order, Defendant, to the full extent permitted by law, absolutely and unconditionally releases and forever discharges the Plaintiffs and Class Counsel from any and all claims relating to the Action—*Ryan et al. v. Bimestefer* (Civil Action No. 17-cv-00904-KLM).

10.    **CONDITIONS:** The Settlement Award Payments referenced in this Settlement Agreement are expressly contingent upon, and dependent upon, final approval of this Settlement Agreement by the Court. The Settlement Award Payments will not be made unless and until the Court has approved the Settlement Agreement for Plaintiffs, individually, and on behalf of the Medicaid HCV Class.

## OBLIGATIONS OF PLAINTIFFS

11.    **PLAINTIFFS' CLASS NOTICE**: Class counsel shall create a webpage that includes the following material for the Medicaid HCV Class to access:

11.1    A brief description of the Action—*Ryan et al. v. Bimestefer* (Civil Action No. 17-cv-00904-KLM);

11.2    Identification of the Medicaid HCV Class;

11.3    A summary of the proposed settlement derived from the Notice;

7

*Ryan, et al. v. Bimestefer*

11.4    A timeline and schedule of events, including deadlines for supporting
or objecting to this Settlement Agreement;

11.5    How to contact class counsel for additional information;

11.6    Settlement documents, or links to documents, including:

      i.   The Notice; and

     ii.   All Court Orders;

11.7    Updates. The webpage created by class counsel shall be updated as the
following information become available:

      i.    Any application(s) for attorney fees, costs and incentive
awards (with all supporting materials);

     ii.    Motion(s), including any objections and Plaintiffs' response to
any objections; and

    iii.    Frequently asked questions, as appended to Exhibit A.[6]

12.    **RELEASE OF CLAIMS:** Plaintiffs Michael Ryan, Sharon Molina, Earby Moxon,
and Heather Myers, on behalf of themselves and the Medicaid HCV Class, absolutely and
unconditionally release and forever discharge Defendant, the Colorado Department of Health Care
Policy and Financing, the State of Colorado, and all of their employees, officers, directors, agents,
contractors, and attorneys, from any and all claims, causes of action, liabilities, expenses, and costs,
which Plaintiffs brought or could have brought in *Ryan, et al. v. Bimestefer*, Civil Action No. 17-cv-
00904-KLM, whether such claims are now known or come to be known in the future. Plaintiffs'
release explicitly applies, but is not limited to, any claims that were brought or could have been
brought pursuant to 42 U.S.C. § 1983, or for injunctive or declaratory relief under federal or state
law. This release shall be binding on Plaintiffs, the HCV Medicaid Class, and all of their agents,
representatives, heirs, beneficiaries, assigns, subrogees, and attorneys. Plaintiffs' release does not
include a release of individual claims by Medicaid HCV Class members, if any, for money damages
under Colorado state law.

13.    **UNKNOWN FACTS:** Plaintiffs acknowledge that they may hereafter discover facts
different from, or in addition to, those which they now know or believe to be true with respect to the
claims released hereby, and they agree that the release shall be and remain effective in all respects
notwithstanding such different or additional facts or the discovery thereof. The provisions of any
state, local, federal or territorial law or statute providing in substance that releases shall not extend to
claims, demands, injuries or damages which are unknown or unsuspected to exist at the time, to the
person executing such release, are expressly waived.

14.    **COVENANT NOT TO SUE:** Plaintiffs Michael Ryan, Sharon Molina, Earby
Moxon, and Heather Myers expressly agree and covenant that they will not sue or assert any cause of

---

[6] Defendant makes no admissions, warranties, or assurances with regard to the representations made
on Class Counsel's webpage, as described in Section 11.

*Ryan, et al. v. Bimestefer*

action, at law or in equity, and whether before a court of law or an administrative agency, against Defendant, the Colorado Department of Health Care Policy and Financing, the State of Colorado, or any of their employees, officers, directors, agents, contractors, or attorneys, for any claims, causes of action, liabilities, expenses or damages arising in any way from the claims brought in this litigation, *Ryan et al. v. Bimestefer* (Civil Action No. 17-cv-00904-KLM).

15.    **HOLD HARMLESS:** Plaintiffs acknowledge that all subrogation and lien claims arising out of contract or under state law or the federal social security program, including, but not limited to, any subrogation or lien claims of Plaintiffs' health care providers, insurance carriers, and state worker's compensation, are the sole and separate obligation of Plaintiffs, which Plaintiffs agree to pay or otherwise resolve. Plaintiffs further agree and covenant to defend, indemnify and hold the State of Colorado and all of their employees, officers, directors, agents, contractors, and attorneys harmless from and against any third party claims including, without limitation, any such lien and subrogee related claims.

16.    **APPROVAL OF SETTLEMENT AGREEMENT BY COURT:** Plaintiffs acknowledge that it is their obligation to obtain approval of the Settlement Agreement from the Court for Plaintiffs Michael Ryan, Sharon Molina, Earby Moxon, and Heather Myers, individually and on behalf of the Medicaid HCV Class. Plaintiffs understand and agree that Defendant's agreement to enter into the Settlement Agreement, or any part thereof, is contingent upon approval of this Settlement Agreement for each of the Plaintiffs, individually and on behalf of the Medicaid HCV Class, by the Court.

17.    **TAXPAYER IDENTIFICATION NUMBER:** Class Counsel shall complete and provide to the State of Colorado an I.R.S. form W-9 "Request for Taxpayer Identification Number (TIN) Verification" for proper reporting of the Settlement Award Payments to the IRS. Additionally, each Class Representative shall provide a signed W-9 as a party receiving funds under the Agreement.

## GENERAL PROVISIONS

18.    **DISMISSAL:** The Parties agree that this Settlement Agreement shall resolve each and every issue raised in the Action—*Ryan et al. v. Bimestefer* (Civil Action No. 17-cv-00904-KLM). Upon final approval of the Settlement Agreement, this case shall be dismissed with prejudice.

19.    **CONSIDERATION:** Plaintiffs acknowledge the receipt of good and sufficient consideration for this Settlement Agreement. Plaintiffs hereby release any claim or action upon which they may seek to overturn this Settlement Agreement, including but not limited to any claim of insufficiency of consideration in whole, or in part, as to any party, regardless of the source of the consideration.

20.    **NO ADMISSION OF LIABILITY:** It is expressly understood and agreed that this Settlement Agreement is in full settlement and satisfaction of the disputed claims, that any injuries or damages and the legal liability therefore are disputed and denied, and that the Settlement Award Payments given in this Settlement Agreement are based solely on the economic consideration of conservation of public money, and is not to be construed as an admission of liability by Defendant, by whom liability is expressly denied. The Parties expressly agree that neither Party is a prevailing party in this Action with regard to an award of attorney fees or for any other purpose.

*Ryan, et al. v. Bimestefer*

21.    **JOINT STATEMENT:** The Parties agree that they will issue an initial joint statement, attached hereto as Exhibit C, concerning the settlement of the Action—*Ryan et al. v. Bimestefer* (Civil Action No. 17-cv-00904-KLM)—and all Plaintiffs' claims arising from the examinations.

22.    **OPEN RECORDS REQUIREMENTS:** Plaintiffs understand and agree that the State of Colorado and its departments, agencies, and employees are bound by applicable public disclosure laws, including, without limitation, the provisions of the Colorado Open Records Act at C.R.S. § 24-72-101, *et seq.* (2018), as presently or subsequently amended, and that the State of Colorado, its departments, agencies, or employees may be required to disclose this Settlement Agreement in its entirety if requested to do so under such statutes. Plaintiffs agree that neither the State of Colorado, nor its departments, agencies, nor employees, shall be liable for the release of public records under such statutes.

23.    **INTEGRATION:** This Settlement Agreement constitutes the entire agreement of the Parties regarding the subject matter hereof. The terms of this Settlement Agreement are contractual in nature and are not mere recitals. As such, the Parties understand, acknowledge and agree that this Settlement Agreement is fully integrated and supersedes all previous oral or written agreements of the Parties.

24.    **BINDING EFFECT:** This Settlement Agreement shall inure to the benefit of, and be binding upon, the heirs, successors, successors-in-interest, assigns, administrators, affiliates, predecessors, and their past and present officers, directors, agents, and employees, and legal representatives of the Parties and any third party beneficiaries.

25.    **CONTRACTUAL AGREEMENT:** Nothing in this Settlement Agreement shall be construed as a consent decree. This Settlement Agreement is a purely contractual agreement entered into by the Parties.

26.    **GOVERNING LAW:** This Settlement Agreement is entered into in Colorado, and shall be governed by the laws of the State of Colorado.

27.    **HEADINGS:** The headings used in this Settlement Agreement are for the convenience of the Parties only. As such, these headings shall not have any legal effect whatsoever or, in any other way alter or modify the meaning or interpretation of this Settlement Agreement.

28.    **SEVERABILITY:** The provisions of this Settlement Agreement are not severable.

29.    **AMENDMENT:** Before entry of any Preliminary Approval Order, this Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Parties. Following entry of any Preliminary Approval Order, this Agreement may be modified or amended only by written agreement signed on behalf of all Parties and as approved by the Court.

30.    **WAIVER:** The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving Party. The waiver by any Party of any breach of this

*Ryan, et al. v. Bimestefer*

Settlement Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

31.    **ADVICE OF COUNSEL:** This Settlement Agreement has been entered into voluntarily by the Parties, without duress and after Plaintiffs, individually and as representatives of the Medicaid HCV Class, have had the opportunity to consult with legal counsel of their choosing, read and understood this Settlement Agreement, and obtained full knowledge of its legal significance. Plaintiffs further understand and agree that, individually and as representatives of the Medicaid HCV Class, this Settlement Agreement shall be forever binding and that no cancellation, recession, or modification of, or release from the terms of this Settlement Agreement shall be made based upon any mistake of fact or of law.

32.    **EXECUTION IN COUNTERPARTS:** This Settlement Agreement may be executed in counterparts, or with signatures obtained via facsimile or electronic mail transmission, each of which shall have full force and effect upon execution by all Parties to this Settlement Agreement, but which together shall constitute a single instrument.

33.    **EXECUTION DATE/CONTROLLER APPROVAL:** This Settlement Agreement shall not be deemed valid until it shall have been approved by the Controller of the State of Colorado or such assistant as he may designate. The execution date of this Settlement Agreement shall be the date that it is signed by the State Controller or his delegate.

34.    **DEBTS OWED TO THE STATE OF COLORADO:** Pursuant to C.R.S. § 24-30-202.4 (as amended) the State Controller may withhold debts owed to State agencies under the vendor offset intercept system for: (a) unpaid child support or child support arrearages; (b) unpaid balance of tax, accrued interest and other charges specified in Article 21, Title 39, C.R.S.; (c) unpaid loans due to the Student Loan Division of the Department of Higher Education; (d) owed amounts required to be paid to the Unemployment Compensation Fund; and (e) other unpaid debts owing to the State or any state agency thereof, the amount of which is found to be owing as a result of final agency determination or reduced to judgment as certified by the State Controller.

35.    **TIMING OF SETTLEMENT AWARD PAYMENTS:** The Settlement Award Payments will be paid within 30 days after the entry of order by the Court granting final approval of the Settlement Agreement.

In witness thereof, Plaintiffs have signed this Settlement Agreement on behalf of themselves and on behalf of the Medicaid HCV Class on the date set forth adjacent to their signatures.

11

*Ryan, et al. v. Bimestefer*

**CAUTION:
READ THIS BEFORE SIGNING.
THIS IS A RELEASE OF ALL YOUR CLAIMS.**

PLAINTIFFS:


Date: _1 - 11 - 2019_

MICHAEL RYAN
Individually and on behalf of the Medicaid HCV Class


Date: _1/12/19_

SHARON MOLINA
Individually and on behalf of the Medicaid HCV Class


Date: _1—12—19_

EARBY MOXON
Individually and on behalf of the Medicaid HCV Class


Date: _____

HEATHER MYERS
Individually and on behalf of the Medicaid HCV Class

12

01/14/2019  09:54    3036658868              POSTNET CO111                    PAGE  02/02

*Ryan, et al. v. Bimestefer*

## CAUTION:
### READ THIS BEFORE SIGNING.
### THIS IS A RELEASE OF ALL YOUR CLAIMS.

**PLAINTIFFS:**

_____        Date: _____
MICHAEL RYAN
Individually and on behalf of the Medicaid HCV Class

_____        Date: _____
SHARON MOLINA
Individually and on behalf of the Medicaid HCV Class

_____        Date: _____
EARBY MOXON
Individually and on behalf of the Medicaid HCV Class

*Heather D Myers*                       Date: 01-14-2019
HEATHER MYERS
Individually and on behalf of the Medicaid HCV Class

12

*Ryan, et al. v. Bimestefer*

**FOR DEFENDANT:**

KIM BIMESTEFER (or designee)
Executive Director
Colorado Department of Health Care Policy &
Financing

Date: 1/24/19

_____
BOB JAROS, CPA, MBA, JD. (or designee)
State Controller, State of Colorado

Date: _____

_____
KARA VIETCH (or designee)
Acting Executive Director
Colorado Department of Personnel and
Administration

Date: _____

13

*Ryan, et al. v. Bimestefer*

**FOR DEFENDANT:**


_____          Date: _____
KIM BIMESTEFER (or designee)
Executive Director
Colorado Department of Health Care Policy &
Financing


_____          Date: _____ 1/29/19 _____
BOB JAROS, CPA, MBA, JD. (or designee)
State Controller, State of Colorado


_____          Date: _____ 1/29/19 _____
KARA VEITCH (or designee)
Acting Executive Director, Colorado
Department of Personnel and Administration


13

*Ryan, et al. v. Bimestefer*

**APPROVED AS TO FORM:**

BAKER & HOSTETLER LLP
ACLU FOUNDATION OF COLORADO
HARVARD LAW SCHOOL CENTER FOR HEALTH LAW AND POLICY INNOVATIONS

Attorneys for the Plaintiffs and the Medicaid HCV Class

PHILIP J. WEISER
ATTORNEY GENERAL

*Jennifer L. Weaver**
First Assistant Attorney General
*Corelle M. Spettigue**
*W. Eric Kuhn**
*Michael D. McMaster**
Senior Assistant Attorneys General
*Rachel O. Entrican**
Assistant Attorney General
*Counsel of Record

Attorneys for Defendant

14

*Ryan, et al. v. Bimestefer*

**EXHIBIT A**

**DRAFT CLASS NOTICE**

15

*Ryan, et al. v. Bimestefer*

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

## HAVE YOU BEEN DIAGNOSED WITH THE HEPATITIS C VIRUS?

## ARE YOU OR WERE YOU ON COLORADO MEDICAID AT ANY POINT FROM JANUARY 1, 2016, TO JANUARY 1, 2018?

## DID YOUR PHYSICIAN SUBMIT A REQUEST TO COLORADO MEDICAID TO TREAT YOUR HEPATITIS C WITH MEDICATION THAT WAS DENIED?

## YOU MAY NOW BE ELIGIBLE FOR MEDICATION TO TREAT YOUR HEPATITIS C INFECTION.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- If you are infected with the Hepatitis C Virus, are or were a Colorado Medicaid member in the two years prior to January 1, 2018, and your doctor submitted a Prior Authorization Request to Colorado Medicaid for treatment with Direct Acting Antiviral drugs ("DAAs") that was subsequently denied, you may now be eligible for treatment.

- Hepatitis C is a viral infection that affects individuals in a variety of ways. Some people experience no negative consequences, while others develop liver problems, including fibrosis of the liver, which may lead to liver cirrhosis or liver cancer. As a result, a person infected with the Hepatitis C Virus is typically assigned a fibrosis score in order to assess and measure the level of liver fibrosis, or scarring.

- Beginning in December of 2013, a new class of drugs—Direct Acting Antivirals (DAAs)—were approved by the Federal Food and Drug Administration to treat individuals infected with the Hepatitis C Virus. Under Colorado Medicaid's previous criteria for approving treatment, a fibrosis score of F2, F3, or F4 was required absent other serious symptoms of the infection. In 2017, four people who alleged that they were improperly denied treatment with DAAs because of their fibrosis score sued Colorado Medicaid in a class action lawsuit. However, while the case was pending and because of its ordinary yearly review of these drug requirements, Colorado Medicaid's fibrosis score criteria were eliminated.

- As of January 1, 2018, the new criteria for approval no longer considers fibrosis score in evaluating a member's eligibility for DAA treatment. Based on this, the Parties to the lawsuit have agreed to a settlement because the fibrosis score criteria is no longer in effect. So, if you are infected with the Hepatitis C Virus and are currently enrolled in Colorado Medicaid, you should consult with your doctor to determine if the new DAA medications are right for you. If you choose to submit a new Prior Authorization Request for DAA treatment, the normal authorization process will apply.

| YOUR LEGAL RIGHTS IN THIS LAWSUIT | |
|---|---|
| YOU MAY COMMENT ON THE PROPOSED SETTLEMENT AGREEMENT. | You have the right to comment on, object to, or support the proposed Settlement Agreement. The Court will decide whether to approve or reject the proposed Settlement Agreement after a Final Hearing on April 25, 2019, at 9:30 a.m. at Alfred A. Arraj United States Courthouse, Courtroom A-401, 901 19th Street, Denver, Colorado. |
| YOU MAY DO NOTHING. | If you do nothing, then you will remain in the class. If you and your doctor decide treatment with DAAs is right for you, you will not be turned down by Colorado Medicaid because of your fibrosis score. |

16

*Ryan, et al. v. Bimestefer*

## FREQUENTLY ASKED QUESTIONS

**1. Why did I get this notice?**

Because you may be someone: (a) who is infected with the Hepatitis C Virus; (b) who is or was enrolled in Colorado Medicaid at any point between January 1, 2016 and January 1, 2018; and (c) who submitted a prior authorization request to Colorado Medicaid for treatment with DAAs, but was subsequently denied because of fibrosis score. If you meet these three factors, you may be a member of the class.

**2. What is this lawsuit about?**

Four people on Colorado Medicaid brought a lawsuit against the Department that administers the Colorado Medicaid program. They alleged that the Department's fibrosis score requirement for approving treatment with DAAs was keeping certain individuals with Medicaid coverage from getting necessary medical treatment for their Hepatitis C infection.

Before a judge could decide the claims in this lawsuit, and as a part of its ordinary yearly practice of reviewing its criteria, the Department removed the fibrosis score requirement in January 2018. A Colorado Medicaid member's fibrosis score is no longer considered for approving treatment with DAAs. Accordingly, the Parties to the lawsuit agreed to a settlement because the fibrosis score criteria at issue in this lawsuit is no longer in effect.

**3. What is a class action and who is involved?**

In a class action lawsuit, one or more people ("the Class Representatives") sue on behalf of other people who have similar claims. The people together are called a "Class" or "Class Members." All of the Class Members together are called the "Plaintiffs." One court then resolves the issues for everyone in the Class.

In this case, Michael Ryan, Sharon Molina, Earby Moxon and Heather Myers are people with Hepatitis C who are enrolled in Colorado Medicaid. They are the Class Representatives in this case. The defendant is the Executive Director of the Colorado Department of Health Care Policy & Financing ("the Department"). The Department administers the Medicaid program in Colorado.

**4. What has happened in this case so far?**

So far, the judge has not considered the central issue in this case regarding the old fibrosis score requirement. The judge has, however, said that this case can proceed as a class action. You can see the order authorizing the class at: www.cohepcsettlement.com. At the time the Department removed the fibrosis score requirement, the Parties began to discuss whether this case could be settled. Those discussions have since resulted in an agreement to settle the case.

17

*Ryan, et al. v. Bimestefer*

**5. What does the proposed Settlement Agreement say?**

The bullet points below tell you the main points of the proposed Settlement Agreement. You can see the whole Agreement online at: www.cohepcsettlement.com

- No Fibrosis Score Requirement for Treatment with DAAs

  Although the Department has no plans to reinstate the Fibrosis Score restriction, the Agreement expressly states that the Department will not reinstate the criteria related to Fibrosis Score into the preferred drug list for a period of two years, starting January 1, 2018, and ending on January 1, 2020. During that period, no criteria changes for DAA treatment can include restrictions based on Fibrosis Score.

- Public Documents Regarding DAA Treatment

  The Agreement states that the Department will provide defense counsel with certain public documents having to do with the treatment of Hepatitis C Virus with DAAs for a period of two years, starting January 1, 2018, and ending on January 1, 2020.

- Provider Education

  The Agreement states that the Department will publish information about the updated criteria change for DAAs in its provider bulletin, and it will also provide a webinar—to be posted on the Department's website—to assist in educating providers about the pharmacy prior authorization process.

- Attorney's Fees

  The Agreement states that the Department will pay some of the attorneys' fees of the attorneys representing the class. The judge will need to approve of this amount.

- Incentive Award to Class Representatives

  The judge will also be asked to award $500 to each of the class representatives. The state is responsible for paying this sum, and the judge must approve of the award.

The judge will hold a hearing on the Agreement. The judge has to approve the Agreement before it can take effect.

**6. How do I respond to the proposed Settlement Agreement?**

You may comment on, object to, or support the proposed Settlement Agreement.

*Ryan, et al. v. Bimestefer*

The judge will hold a final hearing on the proposed Settlement Agreement on April 25, 2019, at 9:30 a.m., at Alfred A. Arraj United States Courthouse, Courtroom A-401, 901 19th Street, Denver, Colorado.

You do not have to attend the hearing, but you can if you want to. You can send comments to the judge instead of coming to the hearing. Comments must be in writing. You must send them to the judge before the hearing. You may attend the hearing, and you may bring a legal representative if you wish at your own expense. You must send the judge a letter before the hearing if you want the judge to allow you to speak at the hearing. Any letters must be sent to:

> Clerk of Court, *Ryan v. Bimestefer*, Case No. 17-cv-00904-KLM
> United States District Court for the District of Colorado
> Alfred A. Arraj Courthouse
> Courtroom A401
> 901 19th Street
> Denver, Colorado 80294

If you choose to send written comments or come to the hearing, the judge must get your letter no later than March 4, 2019. You also have to send a copy of your letter to all of the attorneys involved in this case. Mail copies of your letter to:

| Attorneys for Plaintiffs | | Attorneys for Defendant |
|---|---|---|
| Paul G. Karlsgodt | Mark Silverstein | Jennifer L. Weaver |
| Sammantha Tillotson | Sara R. Neel | Corelle M. Spettigue |
| Baker & Hostetler LLP | Arash Jahanian | W. Eric Kuhn |
| 1801 California Street | ACLU Foundation of Colorado | Michael D. McMaster |
| Suite 4400 | 303 E. Seventeenth Avenue | Rachel O. Entrican |
| Denver, Colorado 80202 | Suite 350 | Colorado Department of Law |
| | Denver, Colorado 80203 | 1300 Broadway, 6th Floor |
| | | Denver, Colorado 80203 |

### 7.  How can I get more information?

For more information, go to: www.cohepcsettlement.com

You can also email Class Counsel at sneel@aclu-co.org or pkarlsgodt@bakerlaw.com

Or you can call Class Counsel at 720.402.3107 or 303.861.0600

19

*Ryan, et al. v. Bimestefer*

**EXHIBIT B**

**DRAFT SPECIAL NOTICE**

*Ryan, et al. v. Bimestefer*

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

## HAVE YOU BEEN DIAGNOSED WITH HEPATITIS C VIRUS?

## WERE YOU ON COLORADO MEDICAID AT ANY POINT FROM JANUARY 1, 2016, TO JANUARY 1, 2018, BUT ARE NO LONGER ELIGIBLE TO RECEIVE MEDICAID BENEFITS?

## DID YOUR PHYSICIAN SUBMIT A REQUEST TO COLORADO MEDICAID TO TREAT YOUR HEPATITIS C WITH MEDICATION THAT WAS DENIED?

## SHOULD YOU BECOME A MEDICAID MEMBER AGAIN, YOU MAY BE ELIGIBLE FOR MEDICATION TO TREAT YOUR HEPATITIS C INFECTION.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- Hepatitis C is a viral infection that affects individuals in a variety of ways. Some people experience no negative consequences, while others develop liver problems, including fibrosis of the liver, which may lead to liver cirrhosis or liver cancer. As a result, a person infected with the Hepatitis C Virus is typically assigned a fibrosis score in order to assess and measure the level of liver fibrosis, or scarring.

- Beginning in December of 2013, a new class of drugs—Direct Acting Antivirals (DAAs)—was approved by the Federal Food and Drug Administration to treat individuals infected with the Hepatitis C Virus. Under Colorado Medicaid's previous criteria for approving treatment with DAAs, a fibrosis score of F2, F3, or F4 was required for Hepatitis C treatment to be covered, absent other serious symptoms of the infection.

- In 2017, four people who alleged that they were improperly denied treatment with DAAs because of their fibrosis score sued Colorado Medicaid in a class action lawsuit. However, while the case was pending and because of its ordinary yearly review of these drug requirements, Colorado Medicaid's fibrosis score criterion was eliminated.

- As of January 1, 2018, the new criteria for approval no longer considers fibrosis score in evaluating a member's eligibility for DAA treatment. Based on this change, the Parties to the lawsuit have agreed to a settlement because the fibrosis score criteria that was at issue in the case is no longer in effect.

- You are receiving this Special Notice to inform you that if you one day again enroll in Colorado Medicaid, you are eligible to request treatment for your Hepatitis C infection with DAA medication, despite the previous denial of any prior authorization request your medical provider may have submitted in the past. Should you become eligible for and re-enroll in Medicaid, your provider may submit a new prior authorization request for DAA coverage, and the normal approval process will apply, except that your fibrosis score will no longer be considered.

- The settlement of the lawsuit does not serve to waive any state law claims you may have against the Department arising from the fibrosis score requirement contained in the prior DAA coverage criteria.

- For more information, go to: www.cohepcsettlement.com.

21

*Ryan, et al. v. Bimestefer*

**EXHIBIT C**

**JOINT STATEMENT**

*Ryan, et al. v. Bimestefer*

### JOINT STATEMENT

The ACLU of Colorado, the Harvard Law School Center for Health Law and Policy Innovation, and the Colorado Department of Health Care Policy and Financing (HCPF), which administers the state's Medicaid program, announced an agreement today that will end the litigation initiated by Colorado Medicaid patients who were denied treatment for Hepatitis C Virus.

In 2017, on behalf of thousands of Coloradans, four individuals infected with Hepatitis C Virus challenged HCPF's treatment criteria by filing a Class Action Complaint against HCPF. While Plaintiffs' lawsuit was pending, HCPF underwent its yearly review of all pharmacy criteria, including the criteria for Direct Acting Antivirals (DAAs), and the treatment criterion at issue was eliminated. Beginning January 1, 2018, Colorado Medicaid clients infected with Hepatitis C Virus became eligible to receive DAAs without regard to their level of liver fibrosis.

As a result of this change, the Parties entered into negotiations to bring the litigation to a close. In addition to lifting the treatment restrictions, HCPF has agreed to pay attorney fees and costs, to provide notice to class members of the changes to HCPF's DAA coverage criteria, and to provide education to providers regarding the prior authorization process.